UNITED STATES of America

v.

**GENERAL DYNAMICS CORPORATION.**

Civ. A. No. CA4–87–312–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 2, 1991.
Supplemental Order Jan. 9, 1991.

F. Henry Habicht II, Asst. Atty. Gen., Land and Natural Resources Div., U.S. Dept. of Justice, Linda C. Anderson, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Evan L. Pearson, Asst. Regional Counsel, U.S. E.P.A., Region VI, Dallas, Tex., Wayne Hughes, Asst. U.S. Atty., Fort Worth, Tex., Peter R. Mounsey, Steven Novick, Trial Attys., Richard B. Stewart, Asst. Atty. Gen., Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Ken Harmon, Office of Enforcement and Compliance Monitoring, U.S. E.P.A., Ashley Doherty, Environmental Defense Section, Environment & Natural Resources Div., Stuart M. Gerson, J. Patrick Glynn, Leslie Yu, Stephen Doyle, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Michael Lowenberg and Antonie Wells Whittie, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., Herbert L. Fenster, Tami Lyn Azorsky, McKenna & Cuneo, Washington, D.C., Michael T. Kavanaugh, McKenna & Cuneo, Los Angeles, Cal., for defendant.

## ORDER

McBRYDE, District Judge.

Pending before the court are five motions for summary judgment, three filed by plaintiff, United States of America, and two filed by defendant, General Dynamics Corporation. The court, having considered the morass of pleadings in this action, makes the following determination:

Plaintiff filed its original complaint on May 7, 1987, under 42 U.S.C. § 7413 for permanent injunctive relief and civil penalties based on defendant's alleged violations of the Texas State Implementation Plan

("SIP") promulgated pursuant to the Clean Air Act, 42 U.S.C. §§ 7401–7642. After having its motion to dismiss denied, defendant filed its answer and counterclaim on July 15, 1988.

Defendant operates Air Force Plant No. 4 in Tarrant County, Texas, at which F–16 aircraft are produced. The facility is owned by plaintiff and all activities at the facility are controlled by the United States Air Force ("USAF"). Plaintiff's complaint alleges that certain operations conducted at the facility emitted or emit volatile organic compounds ("VOCs") in excess of the limits set by the SIP, Texas Air Control Board Regulation V, Rules 115.191 and 115.194. In particular, plaintiff complains of (a) the chemical milling maskant operation, utilized from January 1, 1983, through the present; (b) the epoxy (or PRC) prime line, operated from January 1, 1983, through March 31, 1986; and (c) the adhesive prime line operated since February 1, 1986.[1]

Pursuant to the Clean Air Act and the Texas SIP, all affected persons within certain named counties, including Tarrant County, were required to comply with emissions standards set by the Texas Air Control Board ("TACB") as soon as practicable, but not later than December 31, 1982. The provision relevant to defendant's operations at Air Force Plant No. 4 is set forth in TACB Regulation V, Rule 115.-191(9)(A)(iii):

> (A) Volatile organic compound emissions from the coating (prime and topcoat, or single coat) of miscellaneous metal parts and products shall not exceed the following limits for each surface coating type:
>
> .    .    .    .    .
>
> (iii) 3.5 pounds per gallon (0.42 kg/liter) of coating (minus water) applied as an extreme performance coating....

On June 3, 1985, the TACB issued a notice of violation for VOC emissions at Air Force Plant No. 4 in excess of the Texas SIP limit of 3.5 pounds of VOCs per gallon of surface coating (minus water). On or about July 11, 1985, the Regional Administrator of the Environmental Protection Agency ("EPA") Region V issued a notice of violation to defendant pursuant to 42 U.S.C. § 7413(a)(1). Thereafter, TACB, defendant, USAF, and others, with the knowledge of EPA, met on several occasions and worked out a plan of compliance. An agreed board order was entered on January 17, 1986, which purported to provide for the full resolution of all violations alleged in the notices of violation issued by TACB and EPA. A second notice of violation was issued by EPA on February 24, 1987, alleging that the adhesive prime line exceeded emissions limits.

■ The dispositive issue as to plaintiff's claims in this action is the effect of the agreed board order of January 1986. The parties agree that defendant has complied with the order. The dispute arises because plaintiff contends that the order is a departure from the requirements of the Texas SIP.[2] Defendant claims that the order is within the Texas SIP and that TACB's interpretation of the Texas SIP must be given deference by the EPA.

■ Defendant correctly points out that a federal agency should defer to a state's interpretation of the terms of its air pollution control plan when such interpretation is consistent with the Clean Air Act. *Florida Power and Light Co. v. Costle,* 650 F.2d 579, 588 (5th Cir.1981). The court finds, however, that TACB's interpretation of the Texas SIP is not consistent with the Clean Air Act because the agreed board order would encourage, rather than discourage, the uncontrolled use of VOC-emitting solvents. In other words, the agreed board order does not fall within the parameters of the Texas SIP. First, the order allows plantwide averaging of emissions of

---

1. Plaintiff's complaint alleges that the adhesive prime line has been in operation since November 1, 1985. Apparently the parties have determined through discovery that the start date was actually February 1, 1986. *See, e.g.,* Memorandum in Support of Plaintiff's Motion for Summary Judgment on the Issue of Liability, at 20.

2. As the court has previously determined, plaintiff has standing to bring this action. *See General Motors Corp. v. United States,* — U.S. —, —, 110 S.Ct. 2528, 2533–34, 110 L.Ed.2d 480, 490 (1990).

VOCs to determine whether VOC emissions exceed 3.5 pounds per gallon of coating applied. Second, the order allows gallons of solvent washings used to be included in the total gallons of surface coating for the purposes of determining the number of gallons of coating applied.

The facts in this case are analogous to those in *American Cyanamid Company v. U.S. Environmental Protection Agency*, wherein the plaintiff proposed the application of a so-called "bubble concept" or plantwide averaging of VOC emissions to determine its compliance with Louisiana emissions standards. 810 F.2d 493 (5th Cir.1987). Under the proposed plan, emissions from one source within the plant could exceed emissions limits as long as emissions from another source were low enough to offset the noncompliance. *Id.* at 497. The Louisiana Office of Environment Affairs ("Louisiana OEA") accepted the bubble concept and proposed to EPA that the Louisiana SIP be amended to allow use of averaging. The EPA's regional office recommended that the SIP revision be denied and issued plaintiff a notice of violation. Plaintiff appealed, alleging that the bubble concept was a "device" utilized to lower VOC emissions. The EPA determined that the bubble concept was not a device within the meaning of the Louisiana SIP. Louisiana OEA disagreed. The Fifth Circuit upheld the EPA's determination because it was not clearly wrong or unreasonable and did not contradict the Louisiana SIP's plain meaning. *Id.* at 498.

Likewise, in this case, the court determines that plaintiff's objection to plantwide averaging of VOC emissions is not clearly wrong or unreasonable and is therefore binding. *Id.* The TACB interpretation of the Texas SIP to allow plantwide averaging is unreasonable, because it contradicts specific language of the SIP, which requires each distinct surface coating operation to comply with VOC emissions limits.[3] In this case, the summary judgment evidence reflects, and the court finds, that the three lines at issue are separate and distinct.

The second clearly nonsensical portion of the agreed board order allows defendant to include solvent washings in its calculations of VOCs emitted per gallon of surface coating used. Rule 115.191(9)(A) refers specifically to "[pounds of VOC emissions] per gallon of coating applied." Solvent washings are solvents used to clean parts and to clean up generally after coating operations are completed. Haltmeyer depo. at 18–23. Solvents are not part of the coating applied. Moreover, even if solvents were included as "coating", the agreed board order does not limit the solvents included to those associated with coating operations. Rather, the order allows all general purpose cleaners used at Air Force Plant No. 4 to be included in the calculations.

The intent that gallons of solvent used not be included in the determination of gallons of coating applied is further made clear by Rule 115.191(9)(C), which provides that if solvent washings are directed into closed containers (so that VOC emissions are controlled rather than being discharged into the atmosphere) those emissions do not count as part of the coating operation. The rule would not make sense if gallons of solvent were included in calculating gallons of coating, because there would be no incentive for running solvents into closed containers. If the interpretation urged by defendant were allowed to prevail, defendant and others would actually be encouraged to use more uncontrolled VOC emitting solvents rather than fewer solvents.

■ Because the effect of the agreed board order is to raise the emissions limitations set by the Texas SIP, the order requires approval by plaintiff to be effective. *United States v. Arkwright*, 690 F.Supp. 1133, 1141 (D.N.H:1988). Unless and until such approval is given, defendant must abide by the limitations of the Texas SIP. *General Motors*, —— U.S. at ——, 110 S.Ct. at 2533–34, 110 L.Ed.2d at 490–91.

■ Having determined that defendant's compliance with the agreed board order is not the equivalent of compliance with the

---

**3.** TACB Regulation V, Rule 101.1 defines surface coating processes as "continuous or assem-bly-line surface coating operations using solvent-containing liquids."

Texas SIP, the court next considers whether the three lines individually complied or comply with the SIP. Plaintiff contends that, at the very least, it is entitled to judgment with regard to the epoxy prime line for violations of the Texas SIP between January 1, 1983, and March 31, 1986. In response, defendant makes excuses for, but does not contest, the violation of emissions limits by the epoxy prime line. Accordingly, the court finds that plaintiff is entitled to summary judgment on this issue.

■ The next issue is whether the chemical milling maskant operation is a surface coating process governed by Rule 115.191. The maskant application is an intermediate step in the process of manufacturing airplane parts and is used to protect parts that are to be etched. Parts are dipped in a mixture of maskant and solvent, then dried. Areas on the parts that are to be etched are then unmasked by hand using templates. After the etching process, the remaining maskant is removed and the parts proceed to a machining area for final preparation. The maskant process results in the emission of VOCs.

Plaintiff argues that the maskant is a coating within the definition of Rule 115.-191. Defendant argues that the maskant is not a "coating that will protect the airplane part in the environment in which it will be used" and, further, that the rule applies only to the process of finishing parts and not to intermediate steps, i.e. permanent and not temporary coatings. Defendant bases its arguments on the following passage from EPA's Control Technology Guidelines:

> The coatings are a critical constituent of the metal coating industry. In many cases the coatings must provide aesthetic appeal, but in all cases, they must protect the metal from the atmosphere in which it will be used. Adverse conditions may include moisture, sunlight, extreme temperature, abrasion and corrosive chemicals.

Nothing in the rule or the CTG passage states that a coating is a substance that protects only finished products. The maskant clearly protects metal from the atmosphere of corrosive chemicals during the production process. Accordingly, plaintiff's conclusion that the maskant is a step of the coating process subject to Rule 115.-191 is not clearly wrong or unreasonable and is entitled to deference. *American Cyanamid*, 810 F.2d at 498. Summary judgment will, therefore, be rendered for plaintiff on this issue.

■ The third surface coating process is the adhesive prime line, which has been in operation since February 1, 1986. The parties agree that the adhesive prime line is an extreme performance coating. Moreover, defendant admits that the adhesive prime line emits in excess of 3.5 pounds of VOCs per gallon of coating applied. Accordingly, plaintiff is entitled to summary judgment on this issue as well.

■ The final issue to be considered is whether either party is entitled to summary judgment on defendant's counterclaim. The counterclaim essentially alleges that defendant is entitled to be indemnified by plaintiff because USAF controls all activities at Air Force Plant No. 4 and is responsible for compliance with the Clean Air Act. Plaintiff claims that it is immune from suit in this instance.

■ The law is clear that when the United States institutes an action, a defendant can assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery. *United States v. U.S. Fidelity and Guaranty Co.*, 309 U.S. 506, 511, 60 S.Ct. 653, 655–56, 84 L.Ed. 894 (1940); *United States v. Shaw*, 309 U.S. 495, 501, 60 S.Ct. 659, 661–62, 84 L.Ed. 888 (1940); *Livera v. First National State Bank of New Jersey*, 879 F.2d 1186, 1196 (3rd Cir.1989). Therefore, the court denies plaintiff's motions for judgment on defendant's counterclaim.

■ As for defendant's motion for summary judgment on its counterclaim, the court finds that defendant has failed to show that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. As previ-

ously discussed in the order of June 9, 1988, the record reflects that, at one time, USAF made available to defendant certain funds to install VOC emission control equipment at Air Force Plant No. 4. However, defendant declined the opportunity to install the equipment. Thus, a genuine issue of material fact exists with respect to defendant's entitlement to the relief sought.

The court ORDERS, ADJUDGES and DECREES that plaintiff's motion for summary judgment be and is hereby granted as to the liability issues set forth herein. The court will hear arguments at the pretrial conference regarding the granting of the injunctive relief sought by plaintiff and the timing thereof. Plaintiff's request for penalties will be tried separately. The court further ORDERS that the cross-motions for summary judgment with regard to defendant's counterclaim be and are hereby denied. The court further ORDERS that the pretrial order submitted by the parties shall include a separate section specifying legal and fact issues to be presented to the court with regard to the imposition and amount of penalties, if any.

To the extent that this order conflicts with any prior orders of the court, such prior orders are hereby vacated.

## SUPPLEMENTAL ORDER

On January 2, 1991, this court entered an order finding that General Dynamics (GD) violated the Texas SIP with respect to the maskant, adhesive prime, and epoxy primer surface coating processes operated by GD at Air Force Plant No. 4 in Fort Worth, Texas. GD previously brought the epoxy primer surface coating process into compliance with the emission limitations set forth in the Texas SIP. Accordingly, injunctive relief is necessary with respect to the maskant and adhesive prime processes only. Upon consideration of the arguments of counsel for the United States and counsel for General Dynamics, the court issues the following order and injunctive relief against General Dynamics.

On or about October 12, 1990, General Dynamics and the United States Air Force

(USAF) submitted a site-specific SIP revision request to the Texas Air Control Board (TACB) for the purposes of modifying the Texas SIP requirements pertaining to Air Force Plant No. 4 in Fort Worth, Texas. This site-specific SIP revision request contains provisions, which, if approved and adopted, will regulate both the maskant and adhesive prime coating processes.

Accordingly, during the pendency of the SIP revision request, GD is ORDERED to submit progress reports to the USAF and EPA every six months disclosing the progress made toward controlling emissions from the maskant process and implementing the SIP revision request.

If the emissions from the maskant are not reduced to the level required by the then applicable SIP provision at the end of three years from the date of this order, GD is enjoined from any further operation of that process in Plant No. 4 after that date. Similarly, GD is enjoined from any further operation of the adhesive prime process at the end of three years from the date of this order, unless the emissions from that process will not exceed the level of the then applicable SIP provision.

GD is further ORDERED to cooperate fully with the USAF and EPA with respect to all matters covered by this order as long as this order is in effect; provided, however, the level of cooperation required by GD shall take into account the level of cooperation given to GD by USAF and EPA with respect to such matters.

The United States may request the court to accelerate the effective date of the injunction that prohibits further operation of the maskant and the adhesive prime processes based on progress disclosed by GD in its bi-annual progress reports.