**SIERRA CLUB, Plaintiff**

v.

**ENERGY FUTURE HOLDINGS COR-PORATION and Luminant Genera-tion Company LLC, Defendants.**

Civil Action No. W–12–CV–108.

United States District Court,
W.D. Texas,
Waco Division.

Feb. 6, 2013.

Elena Saxonhouse, Sanjay Narayan, Sierra Club, San Francisco, CA, Erin E. Fonken, Ilan Levin, Environmental Integrity Project, Austin, TX, J. Patton Dycus, Environmental Integrity Project, Atlanta, GA, Julie Kaplan, One Thomas Circle, NW, Washington, DC, for Plaintiff.

Charles D. Olson, Michael W. Dixon, Haley & Olson, P.C., Waco, TX, Philip Stephen Gidiere, III, Thomas L. Casey, III, Balch & Bingham LLP, Birmingham, AL, Russell H. Falconer, William B. Dawson, Gibson Dunn & Crutcher LLP, Dallas, TX, Stacey H. Dore, Energy Future Holdings, Dallas, TX, for Defendants.

## *ORDER*

WALTER S. SMITH, JR., District Judge.

Before the Court is the "Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by Defendants Energy Future Holdings Corporation and Luminant Generation Company

LLC." Having reviewed the motion, response, reply, and applicable legal authority, the Court finds that the motion is without merit and is **DENIED.** Also, the Court will grant leave for Plaintiff to amend its Complaint to state the correct units of measurement for Particulate Matter ("PM") limits under its second cause of action.

## I. Factual and Procedural History

Defendants own and operate a coal-fired electric generating plant, located in Freestone County, Texas, known as "Big Brown Plant." The plant's two units generate electricity with a blend of coal. The electricity generated is supplied to 23 million Texas customers via the electric grid operated by the Electric Reliability Council of Texas ("ERCOT").

The Big Brown Plant is required to operate under a permitting process that limits the amount of pollutants that the plant may legally emit into the air. One measurement of air pollutants is opacity. Opacity is an indicator of the excessive levels of particulate matter pollution being emitted by a facility. Essentially, opacity measures the level of soot in the facility's exhaust. Texas rules define opacity as the "degree to which an emission of air contaminants obstruct the transmission of light expressed as a percentage of light obstructed as measured by an optical instrument or trained observer." 30 TEX. ADMIN. CODE § 101.1(72). The higher the opacity, the less light that passes through a plume of air pollution.

The Clean Air Act requires that each state submit a State Implementation Plan

§ "SIP") to the Environmental Protection Agency ("EPA") for approval. 42 U.S.C. § 7410. Under the Texas SIP, power plant opacity "shall not exceed 30 percent averaged over a six-minute period." 30 TEX. ADMIN. CODE § 111.111(a)(1)(A).[1] Additionally, emissions may not exceed "0.3 pound of total suspended particulate per million [British thermal units ("Btu")] heat input, averaged over a two-hour period." [2] 30 TEX. ADMIN. CODE § 111.153(b) However, Big Brown Plant is permitted to exceed the opacity limit for up to six minutes in any sixty consecutive minutes for "cleaning of a firebox or the building of a new fire, soot blowing, equipment changes, ash removal, and rapping of precipitators." 30 TEX. ADMIN. CODE § 111.111(a)(1)(E).

Plaintiff pleads that according to Defendants' self-reported data, Big Brown Plant violated the 30 percent opacity limit on 6,520 occasions between July 2007 and December 2010 in violation of the Texas SIP, the Defendants' Title V permit, and the Clean Air Act. Plaintiff alleges the violations at times exceeded 90 percent opacity, more than triple the plant's legal limit. Furthermore, Plaintiff alleges that the Big Brown Plant violated the particulate matter ("PM") limits outlined in the Texas SIP. Plaintiff states that using the Defendants' self-reported heat input and sulfur dioxide emissions data the Defendants have violated the PM limit on at least 370 occasions between January 2008 and July 2011. In arriving at the aggregate number of violations, Plaintiff states it has assumed Defendants have utilized their one exemption per hour.

---

1. The opacity limit has been approved by the EPA. *See* 40 C.F.R. § 52.2270(c); 61 Fed. Reg. 20,732, 20,734 (May 1996) (approving the 30 percent opacity limit into the Texas SIP).

2. EPA approved this standard as an applicable requirement of the Texas SIP. 74 Fed. Reg. 19,144 (Apr. 28, 2009) (approving 30 TEX. ADMIN. CODE § 111.153(b) into the Texas SIP).

## II. Analysis

Defendants seek dismissal on multiple grounds. First, they argue dismissal is warranted under Federal Rule of Civil Procedure 12(b)(1) because Plaintiff has not identified a single individual citizen or member of its organization that has suffered a redressable, particularized injury from Big Brown Plant's emissions. Second, Defendants argue dismissal is appropriate under Rule 12(b)(1) because Sierra Club is attempting to collaterally attack the permitting process, which is outside the Court's jurisdiction. Third, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff failed to provide sufficient pre-suit notice of the alleged violations. Fourth, Defendants seek dismissal under Rule 12(b)(6) because Plaintiff fails to state sufficient facts in its Complaint that if proven would show a violation of any emission standards. Finally, Defendants believe dismissal of the claim for injunctive relief is· appropriate because the claim is now moot.[3] The Court finds that these grounds are without merit.

### A. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(1)

#### 1. Standard of Review

■ Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (internal quotation marks omitted). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981).

■ There are two types of 12(b)(1) challenges to subject-matter jurisdiction: facial attacks and factual attacks. *E.g., Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir.2012); *Russell v. City of Houston*, 808 F.Supp.2d 969, 972 (S.D.Tex. 2011) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). The pleading's allegations are presumed to be true, and "[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D.Tex.2012) (citing *Paterson*, 644 F.2d at 523).

■ "A factual attack on the subject matter jurisdiction of the court, however, challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir.1981). When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997); *see also Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir.1986). Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits. *See*

---

3. The Court does not need to address whether the Court should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) since the Plaintiff non-suited its case in state court.

*Garcia,* 104 F.3d at 1261. The court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Id.; see also Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977).

### 2. Sierra Club Standing

Defendants have lodged a facial attack on the pleadings and argue that the suit must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because the Sierra Club has no standing to assert its claims on behalf of its members. Standing is "built on a single basic idea—the idea of separation of powers." *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Standing is an essential part of the case-or-controversy requirement of Article III of the Constitution. *See* U.S. Const. art. III, sec. 2; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). As such, the standing inquiry addresses whether a plaintiff's claims are appropriately resolved by the court. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing implicates the court's jurisdiction and must be addressed before determining whether the plaintiff has adequately stated claims against defendants. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before

addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice."). At the pleading stage of proceedings, the plaintiff need only make general factual allegations of injury caused by defendants. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130.

■ An association has standing to bring suit on behalf of its members when: (1) one or more of the organization's members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *Hunt v. Wash. St. Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Friends of the Earth, Inc. v. Chevron Chem. Co.,* 129 F.3d 826, 827–28 (5th Cir.1997). An association's members have standing to sue if they: (1) suffer an injury in fact; (2) that is traceable to the defendant's challenged conduct; and (3) that is likely to be redressable by the favorable decision in the district court. *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.

■ Plaintiff has demonstrated that this Court has subject matter jurisdiction. The facts in the Complaint are well-pleaded and sufficient to raise a reasonable inference to establish that one of its members has sustained a particularized injury from Defendant's conduct. Plaintiff clearly states:

> Members of the Sierra Club live, work, and recreate in areas nearby and downwind of Defendants' Big Brown plant and have been and continue to be exposed to emissions from the coal-fired power plant. The aesthetic, recreational, environmental, economic and health-related interests of Plaintiff's members have been injured by Defendants' unlaw-

ful and excessive emissions of pollutants from the Big Brown plant into the air. Plaintiff's members have suffered, and will continue to suffer, actual and threatened injury to their health and welfare due to Defendants' ongoing violations of the Clean Air Act described herein. Interests of Plaintiff's members that are directly injured by Defendants' excessive and illegal discharges of pollutants from the Big Brown plant include, but are not limited to: (1) breathing air free from Defendants' excessive pollution emissions, and without the negative health effects—and concern about those effects—that such emissions cause; (2) enjoying outdoor recreation, including fishing in nearby lakes and streams, that is unimpaired by pollution from the Big Brown plant's excessive emissions; (3) using and enjoying property, and viewing and enjoying natural scenery and wildlife that is unimpaired by pollution from the Big Brown plant's excessive emissions; and (4) protecting the natural ecology of the region from air pollution-related impacts.

Pl's Original Complaint [Doc. # 1] at ¶¶ 10–11. This pleading is sufficient to demonstrate that Sierra Club has standing since its members have an injury in fact that is directly related to Big Brown Plant's emissions and can be addressed by a favorable decision by this Court.[4] *See Texans United for a Safe Econ. Educ. Fund. v. Crown Cent. Petroleum Corp.,* 207 F.3d 789 (5th Cir.2000) (holding a plaintiff will suffer injury if compelled to breathe air less pure than that mandated by the Clean Air Act.). Also, Plaintiff has

demonstrated that the interests it seeks to protect are germane to the organization's purpose:

> Plaintiff Sierra Club, which was founded in 1892 by John Muir, is one of the oldest and largest grassroots environmental organizations in the country, with members in Texas and throughout the nation. Sierra Club is dedicated to exploring, enjoying, and protecting natural resources and wild places. Sierra Club promotes the responsible use of the earth's ecosystems and resources, and educates and works to restore the natural environment. The Sierra Club has the specific goal of improving outdoor air quality.

Pl's Original Complaint [Doc. # 1] at ¶ 9. Finally, the claims asserted and relief requested in this case do not require individualized proof from any of its members or necessitate the inclusion of the individual member because Plaintiff seeks civil penalties and injunctive relief, and individualized evidence is not necessary to establish the relief requested. *See Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.,* 686 F.Supp.2d 663, 678 (E.D.La. 2010).

Defendant, however, argues that the Court lacks subject matter jurisdiction because the Plaintiff fails to identify a single member in its pleadings that is affected by Defendants' purported unlawful conduct. The Court disagrees because the Plaintiff is not required to "name names" in its Complaint. *Bldg. and Const. Trades Council of Buffalo, NY. and Vicinity v. Downtown Develop., Inc.,* 448 F.3d 138,

---

4. The Plaintiff has pleaded: "Any person may commence a civil enforcement action under the Act against any party "who is alleged to have violated ... or to be in violation of an emission standard or limitation." *Id.* § 7604(a). An "emission standard or limitation" is any term or condition of a permit issued under an approved State Implementation Plan, any standard or limitation under any approved State Implementation Plan, or any permit term of a Title V Operating Permit. *Id.* § 7604(f)(4)." Thus, the Court may address the injury through a favorable decision.

145 (2d Cir.2006) (holding plaintiff asserting association standing was not required to " 'name names' in a complaint in order to properly allege injury in fact to its members."). The Sierra Club has moved for partial summary judgment that one of its members has suffered an injury in fact. The Court will take up this motion when briefing is complete. At this juncture—and only looking to the pleadings—the Court is persuaded that Sierra Club has standing and the Court has subject matter jurisdiction.

### 3. Impermissible Collateral Attack

■ The Court finds Defendants' characterization of Plaintiff's Complaint as an impermissible collateral attack on the permitting process to be without merit. Section 304 of the Clean Air Act expressly authorizes citizen plaintiffs to bring suit for violations of any emission standards or limitations under a Title V permit *or* any State implementation plan. 42 U.S.C. § 7604(a)(1) & (f)(4). Thus, Plaintiff may assert violations under the Title V permit *and* the State implementation plan.

The two opacity and PM standards that Plaintiff seeks to enforce are in the Texas SIP. 40 C.F.R. § 52.2270(c); 61 Fed.Reg. 20,732 (approving 30 TEX. ADMIN. CODE § 111.111(a)(1)(A) into the Texas SIP); 74 Fed.Reg. 19,144 (approving 30 TEX. ADMIN. CODE § 111.153(b) into the Texas SIP). It is undisputed that the Texas SIP binds the Big Brown Plant Units 1 and 2 to a 30 percent opacity limit and a 0.3 Ib/mmBtu PM limit. Similarly, Plaintiff seeks to enforce the Title V permit limitations and does not seek to challenge its scope. Plaintiff pleads that the Title V permit actually contains a more stringent standard than the Texas SIP. Under Big Brown Plant's Title V permit, each unit may only emit with an opacity limit of 20 percent. It is irrelevant that the Title V permit not mention the 30 percent Texas

SIP standard since it contains a more stringent standard and because the Sierra Club has standing to enforce the Texas SIP standards separate and apart from the Title V permit. 42 U.S.C. § 7604(a)(1) & (f)(1) (granting right to initiate a citizen suit to enforce emission standards and defining standard limitation as "any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter *or* under any applicable State implementation plan.") (emphasis added). The Complaint is clear that Plaintiff is suing to enforce both the Texas SIP and the Title V permit limitations. Pl's Original Complaint [Doc. # 1] at ¶ 26. Having reviewed the Plaintiff's Complaint, the Court is persuaded that Plaintiff is not seeking to impermissibly collaterally attack the Title V permitting process; rather, Plaintiff seeks to enforce the 20 percent opacity limit under the Title V permit and the 30 percent opacity limit under the Texas SIP, and Plaintiff has standing to do both under the Clean Air Act.

### B. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

#### 1. Standard of Review

When considering a dismissal for failure to state a claim upon which relief may be granted, the Court accepts as true "all well-pleaded facts" and views them in the light most favorable to the plaintiff. *See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, a plaintiff must allege specific facts, not conclusory allegations. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations, as well as unwarranted deductions of fact, are not admitted as true. *Guidry v. Bank of La-Place*, 954 F.2d 278, 281 (5th Cir.1992). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

plaintiff must plead "enough facts to state a claim for relief that is *plausible* on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis added); *see also In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id.* at 678, 129 S.Ct. 1937 (quoting *Twombly*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina,* 495 F.3d at 205 (quoting *Twombly* ). Only those complaints which state a plausible claim for relief survive a motion to dismiss. *Id.* In making this determination, the reviewing court must "draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

### 2. Lack of Pre–Suit Notice

 The Court is not persuaded that there was a lack of pre-suit notice in this case. In order to file a citizen's suit, a plaintiff must first provide 60 days pre-suit notice to the EPA, the State, and the permit holder. 42 U.S.C. § 7604(b). Proper pre-suit notice must include:

> [S]ufficient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violations, and the full name and address of the person giving notice.

40 C.F.R. § 54.3(b). "If a plaintiff fails to comply with [a] notice requirement where it is applicable, the district court is required to dismiss the action." *Nat'l Envtl. Found. v. ABC Rail Corp.,* 926 F.2d 1096, 1097–98 (11th Cir.1991) (applying analogous notice provision in Clean Water Act.); *Hallstrom v. Tillamook Cnty.,* 493 U.S. 20, 26, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) ("Under a literal reading of the [Clean Water Act], compliance with the 60–day notice provision is a mandatory, not optional, condition precedent for suit."). The notice requirement is strictly construed to give the permit holder the opportunity to address the allegations before a lawsuit is filed. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) ("[T]he purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizens suit."). Although the notice must be sufficiently adequate so that the recipients can identify the basis for the complaint, "the citizen is not required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy,* 305 F.3d 943, 951 (9th Cir.2002) (quoting *Pub. Interest Research Group v. Hercules, Inc.,* 50 F.3d 1239, 1248 (3d Cir.1995)).

■ Plaintiff provided Defendants with a Notice of Intent to sue on October 27, 2011. The letter clearly alleges that Defendants have violated opacity limits established under the Texas SIP and Title V permit. The letter states that Units 1 and 2 at the Big Brown Plant are the units believed to be in violation by exceeding the opacity and PM limits. It states that Energy Future Holdings Corp, Luminant Generation Company, LLC, and Big Brown Power Company LLC are responsible for these alleged violations, and it gives the full name and address of persons giving notice. The only question is whether Plaintiff provided "sufficient information to permit the recipient to identify ... the date or dates of such violation."

Defendants complain that they were not given adequate notice of the violations that Plaintiff intended to sue over because Plaintiff did not provide the exact dates and times of individual violations. However, "[t]he notice regulation does not require the plaintiff in such a situation to provide the exact dates of alleged violations; rather, it only requires that plaintiff provide 'sufficient information *to permit the recipients* to identify ... the date or dates.'" *San Francisco BayKeeper Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002) (emphasis in original). Plaintiff has satisfied the notice requirement in this case. The Court is persuaded that this letter gives "sufficient information to permit the recipient to identify ... the date or dates of such violation." The Plaintiff provided Defendant with a breakdown of opacity readings by date and time within the hour. Plaintiff exempts one opacity violation every hour, and any remaining emissions readings within the hour that exceed the 30 percent opacity limitation under the Texas SIP are alleged to be unlawful. While Plaintiff does not state specifically which opacity readings are exempted, the Defendants are put on notice and have sufficient information to determine at least within a particular year, quarter, day, and hour when there was an alleged violation such that Defendant could bring itself within compliance with the Clean Air Act.

■ Defendants cite *Center for Biological Diversity v. Marina Point Development Company*, 566 F.3d 794 (9th Cir. 2009) for the proposition that "[There must be] a true notice that tells a target precisely what it allegedly did wrong, and when. The target is not required to play a guessing game in that respect." *Id.* at 800. While the Court agrees with the proposition, it does not believe the Defendants are left guessing like the defendants in *Center for Biological Diversity.* The Court finds that the facts alleged in Sierra Club's Notice of Intent and the particular information provided rise well above the mere generalities of the Notice of Intent in *Center for Biological Diversity.*[5] Similarly, *National Parks and Conservation Association, Inc. v. Tennessee Valley Authority*, 502 F.3d 1316 (11th Cir.2007), is also dis-

5. "The first of the notices on June 30, 2003, declared that 'Section 404 of the CWA' was being violated by activities that began June 17, 2003, which activities were placing "enormous amounts of fill" into the lake and were accompanied by grading below the ordinary high water mark. The notice did not mention any claims under § 402 of the CWA, nor did it give any detail whatsoever regarding just what 'wetlands' were allegedly being affected or how. It also gave no other specif-ic dates. The second of the notices, dated July 17, 2003, Is of the same ilk. It gives little more detail about the activities regarding the lake itself and no more detail regarding wetlands or § 402. Those notices are questionable regarding § 404 violations and insufficient regarding wetlands and any claimed § 402 violations." *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 802–03 (9th Cir.2009).

tinguishable. In that case, the plaintiff alleged that the defendant "failed every day" to comply with EPA regulations. *Id.* at 1330. The court held that "while the letter does date these violations to a nearly 20–year span of time, this provides little guidance to TVA in identifying the violations of which it was accused. *Id.* The Plaintiff, here, has satisfied the pre-suit notice requirement and provided sufficiently more information than the plaintiffs in any of the cases cited by Defendants. Assuming Big Brown Plant was not in compliance, Plaintiff has provided Defendant with sufficient information to determine the nature and times of alleged violations such that Defendants had an opportunity to bring Units 1 and 2 and the Big Brown Plant into compliance.

### 3. Failure to State a Claim

Defendants argue that Plaintiff's Complaint does not allege sufficient facts to show a violation of the applicable PM limitation. In particular, Defendants argue that Plaintiff has misstated the limitation that they allege Defendants violated. Plaintiff assert Defendants violated the "0.3lb/hour PM limit" when in fact the correct limitation is "0.3 Ib/mmBtu." Plaintiff requests leave to amend its complaint to fix this typographical error. Plaintiff's request is **GRANTED.** Plaintiff shall have fourteen (14) days to amend its complaint.

■ Also, Defendants argue that Plaintiff has failed to assert a claim for a violation of the PM limit because Plaintiff does not plead that these events occurred outside of "boiler startup, shutdown, maintenance, or malfunction activities," which may permit a higher opacity rate. The Court is persuaded that Plaintiff has pleaded sufficient facts to raise a reasonable inference of violations of PM matter. Plaintiff has demonstrated dates, times,

and magnitudes of alleged violations outside of exempted events. At this juncture, the Court must accept all well-pleaded facts as true even if they are doubtful in fact. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To the extent that Defendants wish to show that these events fall into a permit exception or affirmative defense, the Defendants should seek to do so at summary judgment or trial.

### 4. Claim for Injunctive Relief is Not Moot

■ Defendants move to dismiss Sierra Club's claims for injunctive relief. Defendants argue that Big Brown Plant recently received a new permit that permits planned MSS emissions. Therefore, they argue the compliance obligations have changed since the 2007–2011 period over which the Sierra Club has sued. Essentially, Defendants argument is that they cannot be enjoined for conduct that is now lawful. *Sierra Club v. TVA*, 592 F.Supp.2d 1357, 1376–77 (N.D.Ala.2009) (dismissing as moot Sierra Club lawsuit over past opacity violations because plant was in compliance with it current permit— "A case seeking injunctive relief based on conduct that has become lawful due to a change in the law rendered moot by the change in law.") (citations omitted).

Plaintiff argues that its claim for injunctive relief is not moot because the permit promulgated by 30 Texas Administrative Code § 101.222(h) is of no effect since § 101.222(h) has been rejected by the EPA and therefore not incorporated into the Texas SIP. *Luminant Generation Co., LLC v. U.S. E.P.A*, 699 F.3d 427, 448 (5th Cir.2012) (holding EPA did not act in an arbitrary and capricious manner by rejecting incorporation of § 101.222 into the Texas SIP). Because § 101.222 is not part of the Texas SIP, any permits issued

based on the authority of § 101.222 are not an applicable defense. *See United States v. General Dynamics Corp.*, 755 F.Supp. 720, 722–24 (N.D.Tex.1991); *Pub. Citizen v. Amer. Elec. Power Co.*, 2006 WL 3813766, at *5–6 (E.D.Tex. Dec. 27, 2006) (finding Texas could not change a limit in a PSD permit issued pursuant to the Texas SIP "without federal approval"). Accordingly, permit no. 56445 does not shield Defendants from the applicable PM and opacity limits in the Texas SIP and Sierra Club's claim for injunctive relief is not moot.

## III. Conclusion

For these reasons, the Court does not believe Defendants are entitled to dismissal on any of the grounds stated in their motion. However, the Court will permit Plaintiff to amend its Complaint to state the correct unit of measurement under its second cause of action. Accordingly, it is

**ORDERED** Defendants Motion to Dismiss is **DENIED.** It is further

**ORDERED** Plaintiff shall have leave of Court to amend its Complaint within fourteen days (14) to state the correct unit of measurement under its second cause of action. It is further

**ORDERED** that Defendants shall have thirty (30) days to respond to Plaintiff's Motion for Partial Summary Judgment.